## E. N. DALY v. C. E. FALK & COMPANY.[1]

### November 26, 1915.

### Nos. 19,515—(108).

**Trover and conversion — question for jury.**

    1. Plaintiff owned 100 shares of the capital stock of defendant. No certificate was ever delivered to plaintiff, but the secretary and vice president issued one in plaintiff's name and delivered it to a bank, claiming that plaintiff had agreed, with the president of the bank, to pledge all his interest in defendant to the bank as security for a loan. Plaintiff in this action sues for conversion, on the theory that he had never agreed to pledge more than 50 shares, and that he had never authorized or directed defendant to deliver the other 50 shares to the bank. The defense was, authority to deliver, and ratification of the delivery. It is *held* that the issue of original authority, as well as the one of ratification, were for the jury, and not for the court upon this record.

**Trial.**

    2. No prejudicial error appears in the rulings during the trial.

**Verdict.**

    3. It does not appear that the verdict by a five-sixths jury was arrived at short of full 12 hours' deliberation.

Action in the district court for Sherburne county to recover $5,000 for conversion of 50 shares of the capital stock of the Daly Hardware Company. The case was tried before Steele, J., and a jury which returned a verdict for the amount demanded. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*E. L. McMillan* and *Charles S. Wheaton,* for appellant.

*Charles B. Elliott* and *Frank T. White,* for respondent.

[1] Reported in 154 N. W. 1081.

HOLT, J.

Plaintiff was the owner of a hardware and machinery business at Elk River, Minnesota. S. S. Petterson, T. H. Caley and E. K. Evans, residents of Princeton, Minnesota, interested there and in other points in like business, agreed with plaintiff to form a corporation with a capital stock of $15,000 to take over his stock in trade and business valued at $13,000. In the deal plaintiff was to receive, for the net value of his business, 50 shares of the capital stock of the corporation, the par value of these shares being $5,000. Plaintiff's business, including all assets thereof, was under this agreement taken over as of January 24, 1913, he being selected as president, treasurer and general manager of the prospective corporation. Thereafter, and before the articles of incorporation were executed, the parties concluded to double the capital stock. Plaintiff was unable to pay for the 50 additional shares which he was to take, and so Mr. Petterson, who was president of the First National Bank at Princeton, undertook to procure a loan of $5,000 for plaintiff with which to pay for these additional shares. Subsequently, in May, 1913, the money was procured, and plaintiff gave his demand notes for the amount. One of the notes ran to said bank, and the other two to an agency under the control of the bank. The name of the corporation was originally Daly Hardware Company, but has been changed to C. E. Falk & Company, defendant herein. Before the first year ended, defendant met with business reverses and dissensions arose between plaintiff and his associates, the owners of the corporate stock. No shares of stock were ever delivered to plaintiff. But T. H. Caley and E. K. Evans, the vice president and secretary of defendant, on June 21, 1913, issued in the name of plaintiff a certificate for 100 shares and delivered the same to Mr. Petterson. Of this plaintiff had no knowledge at the time, and he claims that he never consented to this delivery, and that he never agreed to pledge or deliver to Mr. Petterson more than fifty shares of his stock as security for the loan. The bank, claiming to hold plaintiff's 100 shares as collateral security, foreclosed and sold the same February 6, 1915, to pay the debt, notwithstanding plaintiff's protest that he had never pledged 50 shares thereof. Thereafter plaintiff brought this action against the defendant to recover the value of the 50 shares, on the theory that, by delivering the same to the

bank without plaintiff's authority or consent, there had been a conversion. The trial resulted in a verdict for plaintiff, and defendant appeals from the order denying it judgment notwithstanding the verdict, and also denying a new trial.

The fact that there were three witnesses against one on the issue whether plaintiff agreed to pledge all of his 100 shares to the bank, to secure the loan, does not preclude the jury from accepting as true the version of the one. And there is no testimony that plaintiff had ever authorized or directed defendant or any of its officers to deliver any of his shares to the bank when they were delivered. Nor do we understand defendant's counsel to contend that this court can hold, as a matter of law, that when the defendant delivered plaintiff's shares of stock to the bank on June 21, 1913, it had authority from him so to do as to the 50 shares in dispute, or that he had originally agreed to let the bank have all his interest in defendant as collateral.

But counsel earnestly insists that the evidence is conclusive that plaintiff, subsequent to January 2, 1914, ratified and confirmed the pledge of all his shares to the bank, for, while then knowing that the bank claimed to hold all rightfully, he nevertheless, by negotiations looking toward the payment of the debt, secured time and delay, without questioning the bank's rightful possession of these shares. It admits of no doubt that plaintiff could by conduct impliedly ratify and adopt the act of defendant, or its officers, in issuing and delivering all his shares of stock, although such act was originally done without his knowledge or consent. But we are unable to come to the conclusion that ratification is, as a matter of law, disclosed by this record. It must be remembered that, although plaintiff was president, treasurer and general manager of the corporation, he never signed any of the stock certificates issued; knew not when it was done, and there is no claim that he directed the certificate for any of his stock to be delivered to anyone, except one for 50 shares to a Mr. Houlton, a banker at Elk River. According to plaintiff, he made repeated demands for the certificate of the shares which, under the original agreement, the corporation was to give in payment for his business. The demand was made upon the three persons who with him owned the stock of the defendant corporation. If any ratification of defendant's unauthorized delivery is to be

found, it must be inferred or implied from the conduct, negotiations and transactions had by plaintiff with Mr. Petterson. Although Mr. Petterson was a stockholder of defendant, he was not an officer thereof until the latter part of January, 1914. Mr. Petterson knew from a letter dated December 30, 1913, from Mr. Houlton, mentioned above, that during the previous winter Mr. Houlton received from plaintiff a written agreement to assign the 50 shares of stock, here involved, to Mr. Houlton as collateral. The letter inclosed an order on defendant to deliver these 50 shares to Houlton. The next day, in refusing the request, Petterson writes Houlton: "Our understanding was therefore that we should have for security $10,000 of the stock. It would appear that to Mr. Daly it meant that we should have fifty shares of the stock as collateral." It thus appears that Mr. Petterson well knew plaintiff's position to be that the 50 shares in question were never pledged when the negotiations looking to an adjustment or payment of the debt were in progress; and he admits that nothing was thereafter said with reference thereto, except the letter he wrote to plaintiff January 2, 1914, stating: "This letter will serve as an acknowledgement that you are the owner of one hundred shares of the capital stock of the Daly Hardware Company held by this bank as security for your personal indebtedness." Plaintiff claimed this was received after several unsuccessful attempts made by him, in person and by telephone, to obtain the certificate for his shares from the Princeton parties. There was no dispute about the debt. It was due. Part of the shares held by the bank plaintiff conceded it was rightfully entitled to under the loan agreement. Defendant's enterprise seems to have gone wrong. A fire had increased the loss which must be borne by the stockholders. Plaintiff was in financial straits. Negotiations looking toward a sale of plaintiff's interest in the corporation to the Princeton parties, or vice versa, were had. Under these circumstances an attempted adjustment, or an effort to gain time to pay a conceded obligation is not necessarily so connected with an implied ratification of an unauthorized delivery by defendant of the shares of stock in dispute that it becomes a question of law.

But apart from the foregoing considerations, it is not easy to comprehend how this defendant has proved either conclusively or to any extent that plaintiff ratified the unauthorized delivery of these 50 shares to

the bank. Defendant was not concerned with the debt of plaintiff to the bank or the negotiations for its adjustment. It had received full payment for the 50 shares in question, in fact for all shares owned by plaintiff. And we fail to find any negotiations had by plaintiff with defendant, or any of its officers, concerning the 50 shares involved here, except to insist upon a delivery thereof to himself or to Mr. Houlton. We have not overlooked a statement by Mr. Caley, the vice president, that, when he told plaintiff in the summer of 1913 that the stock had been issued and turned over to Petterson, plaintiff responded, "all right." This plaintiff denies. At any rate, we are not permitted to set aside this verdict on the ground that the proof shows ratification as a matter of law.

Brief reference only need be made to the assignments of error relating to rulings at the trial. It appears that, prior to the trial herein, defendant, in an action brought by it against plaintiff, obtained by stipulation a judgment for nearly $3,000 on account of his doings as manager. As bearing upon the value of the stock converted, defendant offered to prove that an execution issued upon the judgment had been returned unsatisfied. We can see no connection between plaintiff's insolvency and the value of shares of stock in the defendant corporation. The offer was properly excluded. So also was the offer to prove the character of the various items included in the stipulation for judgment as bearing upon the probability of ratification. For, as above stated, the negotiations from which the alleged ratification is to be found were not in any business done with or in behalf of defendant.

The court having permitted all the discussions and letters between plaintiff and his attorney on the one hand, and the bank, its president and their attorney, on the other, to be shown, it was not prejudicial error to receive the written notice served on the bank by plaintiff protesting against the sale by it of the 50 shares in controversy.

The verdict was returned by 10 jurors after the expiration of 12 hours' deliberation. The statement of a juror that these 10 had virtually agreed upon a verdict soon after the jury retired, but had not signed it until just before their return into court, does not vitiate the verdict rendered. Even could such a statement be considered for any purpose,

it does not show that deliberation and effort to agree did not continue for the entire 12 hours.

No other assignment of error requires mention.

The order is affirmed.